BALLY MANUFACTURING CORP., a
Delaware Corporation; Bally's Park
Place, Inc., a Delaware Corporation;
and Bally's Park Place, Inc., a New Jer-
sey Corporation, Plaintiffs,

v.

The CASINO CONTROL COMMISSION
OF NEW JERSEY, Joseph P. Lordi,
Martin P. Danziger, Don M. Thomas,
Madeline McWhinney, and Carl Zeitz,
Defendants,

and

The New Jersey Division of Gaming
Enforcement, and The State of New
Jersey, Intervenors-Defendants.

William T. O'DONNELL, Plaintiff,

v.

The CASINO CONTROL COMMISSION
OF NEW JERSEY, Joseph P. Lordi,
Martin P. Danziger, Don M. Thomas,
Madeline McWhinney, and Carl Zeitz,
Defendants,

and

The New Jersey Division of Gaming
Enforcement, and The State of New
Jersey, Intervenors-Defendants.

Civ. A. Nos. 81–450, 81–451.

United States District Court,
D. New Jersey.

March 9, 1982.

Clive S. Cummis, Sills, Beck, Cummis, Zuckerman, Radin & Tischman, Newark, N. J., and Albert E. Jenner, Jr., Anton R. Valukas, Jenner & Block, Chicago, Ill., for plaintiffs.

R. Benjamin Cohen, Trenton, N. J., for New Jersey Casino Control Commission.

Irwin I. Kimmelman, Atty. Gen. of N. J. by Erminie L. Conley, Asst. Atty. Gen., Trenton, N. J., for intervenors-defendants.

## OPINION

BROTMAN, District Judge.

These are two related civil rights actions brought under 42 U.S.C. § 1983, seeking declaratory and injunctive relief. Plaintiffs challenge the constitutionality of certain provisions of the Casino Control Act of New Jersey, N.J.Stat.Ann. §§ 5:12–1 et seq. (West Supp.1981), as applied to plaintiffs by order of the New Jersey Casino Control Commission entered January 13, 1981. Before the court is defendants' motion to dismiss the actions on abstention grounds.

## I. PARTIES

Defendants in both actions are the New Jersey Casino Control Commission ("Commission") and its individual members. The State of New Jersey and the Division of Gaming Enforcement have intervened as defendants. The Division of Gaming Enforcement ("DGE") was established by N.J. Stat.Ann. 5:12–55 through –57 (West Supp. 1981) in the Department of Law and Public Safety under the supervision and direction of the Attorney General. It is responsible for, among other things, investigating all applicants for casino licensure, enforcing the provisions of the Casino Control Act and prosecuting violations thereof before the Commission. Plaintiff Bally Manufacturing Corp. ("Bally") is a publicly traded Delaware corporation engaged in the business of gaming equipment and the casino industry. Bally owns 82.8% of Bally's Park Place, Inc., of Delaware, which in turn wholly owns Bally's Park Place, Inc., of New Jersey. The Park Place plaintiffs own and operate a major hotel and casino in Atlantic City, New Jersey. Plaintiff William T. O'Donnell, Sr., is the former President and Chairman of the Board of Bally Manufacturing.

## II. FACTS AND PROCEDURAL HISTORY

In February, 1978, Bally and Park Place applied to the New Jersey Casino Control Commission for a casino license and a casino service industry license, pursuant to N.J. Stat.Ann. §§ 5:12–82 to –88 and –92 (West Supp.1981). In connection with this application, plaintiff O'Donnell submitted an application for a casino "key employee" license, pursuant to N.J.Stat.Ann. § 5:12–89 (West Supp.1981). In December, 1979, Park Place was granted a temporary one-year operating permit, under N.J.Stat.Ann. § 5:12–95.1 to –95.11 (West Supp.1981). As a condition of this permit, O'Donnell was required to resign and place his stock in a voting trust pending final adjudication of the license applications. The DGE imposed

this condition because, as a result of its investigations, it anticipated a "substantial likelihood" that it would object to O'Donnell's suitability for licensure. The DGE believed that O'Donnell would not be able to meet the statutory qualification requirement that applicants establish their good character and reputation for honesty and integrity by clear and convincing evidence. N.J.Stat.Ann. §§ 5:12–84(c) and –89(b)(2) (West Supp.1981).

In August, 1980, the DGE concluded its investigation and the Attorney General submitted a report to the Commission, in accordance with the Act. N.J.Stat.Ann. 5:12–76(a) (West Supp.1981). Along with the report, the Attorney General filed a "Statement of Issues" summarizing the major points of the investigation and objecting to the licensure of plaintiffs. The formal licensing hearing before the Commission began in November, 1980, and continued for six weeks. At its conclusion, the Commission ruled that O'Donnell had not proved by clear and convincing evidence his good reputation for honesty and integrity. The Commission denied O'Donnell's application because of his "associations" with persons "of unsuitable character and reputation," and because of his alleged participation in an attempt to influence improperly Kentucky legislators in 1968. (Def. Ex. J). As a condition of the Bally companies' licensure, O'Donnell was required to submit a plan for divestiture of his Bally stock and to sever all business relationships with the corporate plaintiffs. Such a plan was submitted, but actual divestiture has been stayed pending appeal of the licensing decisions in state court. On January 13, 1981, the Commission's final orders were entered. (Def. Ex.s G, H, I). The Commission's formal opinion, including findings of fact and conclusions, was filed on March 16, 1981. (Def. Ex. J).

On February 13, 1981, plaintiffs simultaneously filed appeals of the Commission's orders in the Superior Court of New Jersey, Appellate Division (Def. Ex.s E, F, G), and filed these actions in this court.

In their federal complaints, plaintiffs allege that the Commission's decision is arbitrary and capricious, violates plaintiffs' First Amendment associational rights, results from bias and prejudgment, and is not rationally related to the State's interests, in violation of the Fourteenth Amendment's Due Process Clause. Plaintiffs also allege that the licensing conditions imposed by the Commission unduly burden interstate commerce and interfere with national securities markets in violation of the Supremacy Clause.

On appeal in state court, plaintiffs argue that the Commission's decision was arbitrary and capricious, against the weight of the evidence, and that it violated plaintiffs' due process rights under the state constitution. They also argue that the Commission's actions were inconsistent with its prior decisions, contrary to legislative intent, and in excess of the authority delegated by its enabling legislation, N.J.Stat.Ann. §§ 5:12–1 et seq. (West Supp.1981). Plaintiffs informed the Appellate Division that they intended to preserve all federal claims for consideration by this court, pursuant to *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). (Brief of the Applicants-Appellants in the Superior Court of New Jersey, Appellate Division, Def. Ex. O).

## III. DISCUSSION

We begin consideration of defendants' motion to dismiss with three important principles in mind. First, federal courts are obligated to exercise the jurisdiction conferred upon them by Congress and the Constitution. As Chief Justice Marshall wrote: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821). Thus, the exercise of jurisdiction is the rule; abstention is the "extraordinary and narrow exception." *Colorado River Water Conservation District v. United States*, 424 U.S.

800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), *quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

■ Second, in actions under 42 U.S.C. § 1983, the plaintiff is not required to exhaust state judicial remedies. "The federal remedy is supplementary to the state remedy, and the latter need not first be sought and refused before the federal one is invoked." *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). *See Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam); *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). *See also United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226 (3rd Cir. 1977); *Leonard v. City of Columbus*, 551 F.2d 974 (5th Cir.), *adopted mem. en banc*, 565 F.2d 957 (5th Cir. 1977), *cert. denied*, 443 U.S. 905, 99 S.Ct. 3097, 61 L.Ed.2d 872 (1979).

■ The third and final principle is that of comity within the federal system, a principle that rests in an uneasy tension with the previous two. Comity consists of a proper respect for state functions, and a

> sensitivity to the legitimate interests of both State and National Governments, . . . in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971).

We will first address the question of whether the *Pullman* abstention/*England* reservation procedure is appropriate in this case, as plaintiffs assert. Then we will discuss the two grounds for abstention and dismissal urged by defendants.

### A. *Pullman* and *England*

Plaintiffs' state appeals present a number of unsettled state law issues regarding the interpretation and application of the Casino Control Act. Because of these difficult and unresolved issues, the plaintiffs believe that *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), directs them to bring the state law issues before a state tribunal. However, they submit that *England v. La. State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), entitles them to reserve federal issues for decision in federal court.

■ We agree. The character of this case is very similar to *Pullman*, where plaintiffs sought to enjoin enforcement of a state administrative order, challenging the order on both state law and federal constitutional grounds. Because the state law questions, when resolved, may have rendered unnecessary a decision on the federal constitutional issues, the plaintiffs' action was stayed pending decision by the state court. In *England v. Medical Examiners*, the Supreme Court guaranteed to plaintiffs subject to the *Pullman* doctrine the right to return to federal district court to litigate federal issues. The Court observed,

> There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims.

*England*, 375 U.S. at 415, 84 S.Ct. at 464. A party foregoes this right only when he "freely and without reservation submits his federal claims for decision by the state courts. . . ." *Id.* at 419, 84 S.Ct. at 466. To preserve the right, the federal plaintiff should notify the state tribunal of his reservation of federal claims to "inform those courts what his federal claims are, so that the state statute may be construed 'in light of' those claims." *Id.* at 420, 84 S.Ct. at 467. Plaintiffs have followed this procedure in the instant cases.

Defendants argue that the *Pullman/England* procedure is not appropriate in this case. They oppose the entry of a stay with

a later right to return, and insist that the actions must be dismissed. The central thrust of their argument that this is not a *Pullman/England* type case is that, because plaintiffs' appeals in state court also challenge the Casino Control Act on *state* constitutional grounds, the appeals and the actions here are "really" the same. Defendants' argument that the state and federal constitutional questions are "mirrors," involving the same standards, does not deprive plaintiffs of their right to a federal forum. The fact that the state constitution may be construed in identical or similar ways does not transform federal constitutional issues into state law issues. In fact, if such constitutional questions were the *only* state law issues plaintiffs desired to raise, they would not be subject to *Pullman* abstention at all. Most states have constitutional provisions similar to those in the Bill of Rights and the Equal Protection Clause which have been interpreted in a manner which conforms to Supreme Court interpretation of their federal counterparts. To require abstention solely because a state statute might conflict with state constitutional provisions of this kind "would convert abstention from an exception into a general rule." *Examining Board of Engineers, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976). The Ninth Circuit Court of Appeals has observed, "Since most states have some form of due process clause and some form of equal protection clause, abstention would be necessary, or at least within the power of the district judge, in nearly every civil rights action." *Stephens v. Tielsch*, 502 F.2d 1360, 1362 (9th Cir. 1974). Several other circuits have also held that *Pullman* abstention is not required where a state constitutional provision is the mirror of the federal one. *Herald Co. v. McNeal*, 553 F.2d 1125 (8th Cir. 1977); *Drexler v. Southwest DuBois School Corp.*, 504 F.2d 836 (7th Cir. 1974) (en banc); *Reid v. Board of Education*, 453 F.2d 238 (2nd Cir. 1971). *See Donohoe Constr. Co. v. Maryland-National Capital Park & Planning Comm'n*, 398 F.Supp. 21, 24–31 (D.Md. 1975). *See also Harris County Comm'rs,*

*Court v. Moore*, 420 U.S. 77, 84 n.8, 95 S.Ct. 870, 876 n.8, 43 L.Ed.2d 32 (1975).

Defendants point to the abundance of federal case law presented in plaintiffs' state appellate briefs, and argue that this should foreclose their litigation of federal claims here. But the presence of these federal standards or precedent in the state appeals is not dispositive of this matter. In addition to its own state constitution, a state court always acts under the constraints of the federal constitution. U.S. Const. Art. VI. But the Supremacy Clause does not work to confine federal plaintiffs to air their constitutional claims solely in state courts. The Court in *England* recognized that despite the theoretically strict division of issues, federal constitutional issues might, as a practical matter, be argued by the litigants during the state proceedings, or even be raised and addressed by the state court itself. *England*, 375 U.S. at 420–22, 84 S.Ct. at 467–68. This alone, in the face of the party's express reservation, would not deprive the party of the opportunity to return to federal district court. *Id.* at 422, 84 S.Ct. at 468.

■ Given the complex statutory issues on appeal in state court, we agree with plaintiffs that *Pullman* and *England* apply to this case. *See Rosko v. Pagano*, 466 F.Supp. 1364, 1372–73 (D.N.J.1979). The procedural consequence of our conclusion is neither dismissal, as defendants request, nor immediate proceedings, as plaintiffs suggest. Before the court proceeds in this case, the state law issues are to be decided by the state courts. Where *Pullman* abstention is appropriate, the district court does not dismiss the action, but stays proceedings pending the state court decision. *American Trial Lawyers Ass'n v. New Jersey Supreme Court*, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973). While neither party requested a stay of the action, we believe this is the correct result. Otherwise, the primary policy of *Pullman*—avoidance of needless constitutional decision—would not be served.

Having scrutinized plaintiffs' complaints and their state appellate brief, we find that

plaintiffs have presented only federal issues to this court. The next question is, should the court abstain from deciding even these *federal* questions because of the policy concerns of comity and federalism. Defendants urge that dismissal of these actions is mandated by the two lines of abstention doctrine embodied in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and progeny, and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Unlike *Pullman* abstention where the action is merely stayed, under these branches of abstention the district court ordinarily dismisses the action. *See, e.g., Allegheny Airlines v. Pennsylvania Public Utility Comm'n*, 465 F.2d 237 (3rd Cir. 1972). *But see Williams v. Red Bank Bd. of Educ.*, 662 F.2d 1008 (3rd Cir. 1981). For the reasons discussed below, we do not agree that this case is controlled by *Younger* or *Burford*, and we will deny defendants' motion to dismiss.

### B. *Younger* Abstention

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court first articulated the doctrine of "equitable restraint" or *Younger* abstention. The Court reversed the order of a three-judge district court that had enjoined the state from prosecuting plaintiff, a criminal defendant indicted under the state's Criminal Syndicalism Act. The Court did so because the order was "a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances" such as bad faith, harassment or bias. *Id.* at 41, 91 S.Ct. at 749. The foundation for this policy was found in traditional equitable doctrines as well as the principle of comity within a federal form of government. *Id.* at 43–45, 91 S.Ct. at 750–51.

Originally developed in the context of pending criminal actions, the reach of *Younger* was eventually extended to civil proceedings "in aid of and closely related to criminal statutes," *Huffman v. Pursue Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975), and then to civil cases such as a judicial contempt proceeding, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), an attachment action to recover sums obtained by welfare fraud, *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), and a state custody action to remove children from parents accused of child abuse. *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). It has also been applied in the Third Circuit to disciplinary proceedings of the state Bar, *Gipson v. New Jersey Supreme Court*, 558 F.2d 701 (3rd Cir. 1977) (per curiam), and teacher disciplinary proceedings (tenure revocation), *Williams v. Red Bank Bd. of Education*, 662 F.2d 1008 (3rd Cir. 1981).[1]

Although mindful that the criminal/civil distinction is not controlling, *Rosko v. Pagano*, 466 F.Supp. 1364, 1371 (D.N.J.1979), we do believe that the category of cases above is not so broad as to include each and every civil case in which the state is involved or interested. *See Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743 at 746–747 (3rd Cir. 1982). We conclude that the *Younger* doctrine is, still, linked to the concept of law enforcement, be it criminal or civil law, against persons charged by the state with some infraction. The doctrine is designed to permit a state to implement its laws without federal intervention in state proceedings brought to enforce those laws. Where the state initiates

---

1. We agree with defendants that *Huffman v. Pursue, Ltd.* included an available state appeal within the notion of a "pending state court proceeding" for *Younger* purposes. We do not think there is any room for argument about the fact that there are, at this moment, proceedings pending in the Appellate Division. Plaintiffs assert that because the federal complaints were filed hours before the state appeals, that technically no state proceeding was pending. This is contrary to the well-established rule that time of filing is not dispositive of this issue. Rather, if the state action which plaintiff seeks to enjoin has been filed any time before "proceedings of substance on the merits" in the federal action, the court should dismiss if the case is otherwise governed by *Younger* principles. *Hicks v. Miranda*, 422 U.S. 332, 349–50, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975).

a civil or criminal action to vindicate a policy or law which the federal plaintiff is violating, a federal injunction halting the state proceedings would allow and encourage defiance of that law or policy. This, in our view, is the evil that *Younger* addresses. We agree with the view expressed in *Santiago v. City of Philadelphia*, 435 F.Supp. 136 (E.D.Pa.1977), that *Younger* equitable restraint is mandated

> only in cases where the federal plaintiffs have attempted to invalidate a state statute and thereby enjoin a pending state civil proceeding which was initiated by the state against these individuals and was intended to enforce or vindicate an important state policy.

*Id.* at 145 (citations omitted); cited with approval, *Johnson v. Kelly*, 583 F.2d 1242, 1247, 1251 (3rd Cir. 1978).

Concerned that the extension of *Younger* principles to all civil litigation would effectively impose an exhaustion requirement on § 1983 plaintiffs, the Third Circuit in *Johnson v. Kelly* fashioned a rule which serves to limit *Younger* abstention to its appropriate sphere. 583 F.2d at 1250, 1252. In *Johnson*, plaintiffs filed suit in federal court challenging the constitutionality of the Pennsylvania tax sale statute, under which their land had been sold without notice to them. The pending proceedings in state court which plaintiffs sought to enjoin were actions to quiet title between private litigants. The court of appeals, finding *Younger* inapplicable, drew the distinction between a privately-initiated suit and one begun by the state. The court stated that the *Younger* doctrine "should not be extended to cases in which the state proceedings have not been initiated by the state itself." 583 F.2d at 1249. Similarly, in

*New Jersey Educ. Ass'n v. Burke*, 579 F.2d 764 (3rd Cir.), *cert. denied*, 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978), the court noted that "we are most reluctant to stretch the equitable doctrine of *Younger* beyond its prior boundaries to encompass a situation in which the only pending proceeding is a civil action filed by a federal plaintiff in a state court." *Id.* at 771. *See also Kennecott Corp. v. Smith*, 637 F.2d 181, 186 n.4 (3rd Cir. 1980).

In addition to the requirement that the action be initiated by the state, there is a second essential aspect of *Younger*-type cases. In each of the cases applying *Younger* in the Supreme Court and the Third Circuit, the plaintiff sought *to enjoin further prosecution* of state proceedings, judicial or administrative, which had been initiated by the state or its instrumentality against the plaintiff. The federal plaintiff sought to stop proceedings against him and be immunized by the federal court's intervention.

This is not the situation here, where plaintiffs have commenced the administrative licensure proceedings themselves by submitting applications, have complied with every regulation and order imposed upon them by state law, and when faced with an adverse administrative decision, have actively sought state judicial proceedings to review the decision. The plaintiffs in this case, to put it simply, do not attempt to halt any state-initiated proceedings. They do not ask this court to force the state to cease action on plaintiffs' appeal. We find this to be a critical distinction between the instant case and *Younger*-type cases, for absent such a design to enjoin proceedings, we do not believe that the federal relief sought will disrupt state law enforcement efforts.[2]

---

2. The court of appeals' recent decision in *Williams v. Red Bank Bd. of Education*, 662 F.2d 1008 (3rd Cir. 1981), which affirmed a *Younger*-type abstention, confirms our decision. There, plaintiff, a teacher, brought action in federal court seeking to enjoin further prosecution by the school board of a state administrative tenure-revocation proceeding, on grounds that the filing of administrative charges against her violated her rights under the First and Fourteenth Amendments.

The central holding of the case is that, under proper circumstances, *Younger* abstention may be warranted when the pending state proceeding is administrative, rather than judicial. While that holding is not relevant to this case, we believe that *Williams* supports our approach here. First, *Williams* reaffirms the *Johnson* holding that *Younger* is limited to state-initiated actions. *Id.* at 1019. This rule is in furtherance of what we conceive to be the proper focus of *Younger*: the protection of

As we are not going to proceed to the merits of plaintiffs' federal claims until the state appeals are concluded, we find unsupportable the state's argument that our hearing this case will severely damage the state's effectuation of its casino control policies. Our decision not to dismiss this case will not signal to others, as a contrary decision in *Younger*-type cases would, that the filing of a federal lawsuit will release them from state proceedings. It will not undermine New Jersey's efforts to control casino gambling, except to the extent that the state seeks to control the casino industry unconstitutionally. We agree with plaintiffs that the federal role is the limited one of setting the constitutional parameters within which the state is free to adopt and enforce regulatory policy and law.

█ In conclusion, it is our opinion that the *Younger* doctrine is inapplicable for three reasons. First, the pending state proceeding was not initiated by the state, but by plaintiffs. Second, plaintiffs do not seek to enjoin any state proceedings by bringing this federal action. Third, given our decision to stay the action pending resolution of plaintiffs' state appeals, we do not believe that our hearing this case will disrupt state efforts to enforce its laws or to effectuate its regulatory policy.

## C. *Burford* Abstention

The next argument advanced by defendants in support of their motion to dismiss is that the instant case is governed by *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and *Alabama Public Service Commission v. Southern Ry.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). These two cases were the progenitors of a branch of abstention doctrine known as administrative or *Burford* abstention.

*Burford* was an action by a Texas oil producer to enjoin the execution of a state regulatory commission's order granting a

neighboring leaseholder (the defendant) a permit to drill new wells. The Court's opinion is highly fact-oriented. The regulation of Texas oil fields was technically complex. The granting of permits physically affected the rights of all other producers in the well-field, by virtue of the geological structure of the field. 319 U.S. at 319, 63 S.Ct. at 1100. The commission formulated its policy almost on a case-by-case basis, making many exceptions to its general standards. *Id.* at 320–25, 63 S.Ct. at 1100–03. The oil industry was a central force in the state's economy, intensifying the need for a smooth, error-free regulatory system. *Id.* at 320, 63 S.Ct. at 1100. This and other problems led Texas to centralize judicial review of the commission's orders in the courts of a single county. Such concentration was designed to maximize the court's special expertise and minimize inconsistent decisions. *Id.* at 325–27, 63 S.Ct. at 1103–04. The reviewing courts were empowered with a broad authority to undertake de novo review as well as propose new regulatory standards. *Id.* at 326, 63 S.Ct. at 1103. The legal standards to be applied were complicated and technical, and had to be gleaned from over fifty Texas decisions. *Id.* at 331 n.28, 63 S.Ct. at 1106 n.28. The Supreme Court concluded on the basis of these facts that a federal injunction was likely to disrupt the entire regulatory scheme and create conflicting interpretation of state law. Since the Court was satisfied that the state courts would provide plaintiff with adequate review, the district court's dismissal in deference to the state's interests was warranted. *Id.* at 332–34, 63 S.Ct. at 1106–07.

In *Alabama PSC*, a railroad company sought to enjoin enforcement of a state commission's order which refused to allow the railroad to discontinue passenger service on two unprofitable intrastate routes. The Supreme Court, citing *Burford*, gave three reasons for ordering abstention.

state law enforcement interests. Second, the *Williams* case again points to the critical element that the relief sought by the plaintiff is to enjoin state proceedings. *Id.* at 1011, 1017,

1018 n.10. Here, as discussed above, plaintiffs do not seek to enjoin any proceedings. On the contrary, they have voluntarily pursued further proceedings in state courts.

First, because intrastate railroad regulation was " 'primarily the concern of the state,' " the action involved an "essentially local problem" of balancing the railroad's losses against the public's transportation needs. 341 U.S. at 347–48, 71 S.Ct. at 767. Second, the state had concentrated judicial review of these administrative orders in the circuit court of one county. Finally, the reviewing court exercised an unusually broad "supervisory" authority, including the power to make de novo findings of facts and law. In these circumstances, the statutory appeal in state court was "an integral part of the regulatory process." *Id.* at 348, 71 S.Ct. at 767. Given the adequacy of state review mechanisms, the federal court should not have exercised equitable jurisdiction. *Id.* at 349–50, 71 S.Ct. at 768. Both *Burford* and *Alabama PSC* voiced the goal of deference to "the rightful independence of state governments" in carrying out domestic policy. *Burford*, 319 U.S. at 317, 63 S.Ct. at 1098; *Alabama PSC*, 341 U.S. at 349, 71 S.Ct. at 768.

*Burford*-type abstention is the least well-defined and most difficult to apply. *Constr. Aggregates Corp. v. Rivera de Vicenty*, 573 F.2d 86, 89 (1st Cir. 1978). The Supreme Court has used sweeping language to summarize its range. It has been said to apply "where exercise of jurisdiction by the federal court would ... create needless friction by unnecessarily enjoining state officials from executing domestic policies." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959) (dictum). More recently, in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Court described it as applicable where "the exercise of federal review of the question in a case and similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 814–15, 96 S.Ct. at 1244–45.

Such language does not decide the case at hand. It is clear that, in some cases, the federal constitution unavoidably commands interference with state objectives. "There is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail*, 434 U.S. 374, 379 n.5, 98 S.Ct. 673, 677 n.5, 54 L.Ed.2d 618 (1978). To hold otherwise would mean as a practical matter that a federal court could never declare a state statute unconstitutional. *Wynn v. Carey*, 582 F.2d 1375 (7th Cir. 1978). As the First Circuit succinctly stated, "The state has no right to an unconstitutional policy, coherent or otherwise." *Allstate Ins. Co. v. Sabbagh*, 603 F.2d 228, 232 (1st Cir. 1979).

In addition to the ambiguity of the Court's references to *Burford*, the fact is that the Supreme Court has not relied on *Burford* as a ground for decision in three decades, since *Alabama PSC*—the only other Supreme Court case which ordered *Burford* abstention. The Court has refused to apply *Burford* in a number of cases. *Zablocki v. Redhail, supra; Colorado River Water Conserv. District v. United States, supra; McNeese v. Board of Educ.*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *County of Allegheny v. Frank Mashuda Co., supra. Burford* was entirely overlooked as a branch of abstention in *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977), which identified only "two primary types" of abstention: *Pullman* and *Younger. Id.* at 475–78, 97 S.Ct. at 1901–03. *See also Juidice v. Vail*, 430 U.S. 327, 347–48, 97 S.Ct. 1211, 1223, 51 L.Ed.2d 376 (1977) (Stewart, J., dissenting).

Lower courts, however, continue to struggle to define its contours. *See* Note, Abstention by Federal Courts in Suits Challenging State Administrative Decisions: The Scope of the *Burford* Doctrine, 46 U.Chi.L.Rev. 971 (1979). In this Circuit, only a few cases have addressed the doctrine.

In *Baltimore Bank for Cooperatives v. Farmers Cheese Cooperatives*, 583 F.2d 104 (3rd Cir. 1978), the court of appeals reversed the district court's decision to abstain. Summarizing *Burford*, the court emphasized that

the issues involved specialized knowledge of state policy and a complicated regulatory system. Because regulation of the industry . . . clearly involved basic problems of state policy, the Court concluded that intervention by the federal courts was certain to result in conflicts of interpretation of state law . . . .

*Id.* at 109. We agree with defendants that *Baltimore Bank* is distinguishable from the instant case in that it was "an ordinary suit in assumpsit" involving no constitutional or state policy questions. *Id.* at 110. Nonetheless, the Circuit's summary does indicate some salient features of the *Burford* case, particularly the specialized nature of the issues, and the potential for generating conflicting interpretations of state law.[3]

The only cases in which the Third Circuit has sustained a *Burford*-type abstention are *Allegheny Airlines Inc. v. Pennsylvania Public Utility Comm'n*, 465 F.2d 237 (3rd Cir. 1972) and *Urbano v. Bd. of Managers of New Jersey State Prison*, 415 F.2d 247 (3rd Cir. 1969).

*Allegheny Airlines* offers little elaboration of *Burford* and *Alabama PSC*, because the facts of the case were remarkably similar to *Alabama PSC*. Both involved the discontinuance of local passenger service by a carrier subject to state public utility regulation. While the court of appeals noted that the "critical factors" were the presence of "significant state concerns" and the promotion of "needless friction between state and federal jurisdiction," 465 F.2d at 242, the court seemed particularly disturbed that a successful suit by the airline would amount to a "total disregard" of state policy. *Id.* at 244. On preemption grounds, the airline sought to avoid being subject to any state administrative or judicial proceedings under state law. It sought to enjoin any and all actions by the regulatory commis-

sion against it. By contrast, the instant plaintiffs do not attempt to "ignore the state regulatory body" or encourage others to do so. They have submitted to state regulation and only challenge certain aspects which they contend exceed constitutional bounds. This is not analogous to *Allegheny Airlines*, where plaintiffs sought a total release from all obligations imposed by state law, a complete exemption from state regulation, while still retaining the benefits of the state public utility certificate.

*Urbano* was an action by a prison inmate alleging mismanagement of a prisoners' trust fund established pursuant to New Jersey law. The Circuit affirmed the district court's dismissal on the basis of *Pullman* and *Burford*. The court found that the exercise of jurisdiction threatened to interfere with prison administration, an important state function. The case also presented unsettled and complex questions of state law. It did not involve any constitutional issues—in fact, it involved no federal issues, jurisdiction being based on diversity of citizenship. The court acknowledged that the "doctrine of abstention has been narrowly circumscribed when constitutional issues are presented." 415 F.2d at 253. The court relied on *Burford* as authority for a dismissal rather than a stay, noting that a stay would be futile given the fact that the case turned only on state law questions which would be conclusively determined in the state courts. *Id.* at 255 & n.23. Therefore, while the opinion does make reference to the federal court's disinclination to "determine or shape state policy," *id.* at 256, we find the case distinguishable for the reason that we are not here confronted with any state law issues to decide. Our stay of the action will permit the state courts to definitively rule on all questions of state law, while reserving federal issues for decision here.

---

**3.** In *Garrett v. Bamford*, 582 F.2d 810 (3rd Cir. 1978), the court affirmed the district court's abstention, and made reference to *Burford* and *Alabama PSC*. *Id.* at 819. However, this case is properly understood not as an example of *Burford* abstention, but as an application of the Tax Injunction Act, 28 U.S.C. § 1341. Insofar as abstention was the ground of decision, the

court explicitly followed *Spector v. McLaughlin*, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944), which ordered a *Pullman* stay in a like situation. 582 F.2d at 819. The fact that the Circuit ordered the district court merely to stay the action, and not dismiss, indicates that it was not applying *Burford*.

Defendants isolate as the decisive factors of *Burford* abstention (1) complex questions of state law (2) relating to matters of substantial public import, (3) resolution of which would be disruptive of state efforts to implement a coherent regulatory framework. We would also add the specialized, technical character of the issues and administrative system involved, and the likelihood of generating conflicting decisions of state law.

■ Defendants inform the court that the regulation of the casino industry is of greater importance to the state than the prevention of welfare fraud, protection against child abuse, and regulation of the medical, legal and teaching professions. (Brief of the Attorney General at 10–12; Brief of the Commission at 26–28). While the control of legalized gaming is assuredly of major significance to the State of New Jersey, this alone does not make *Burford* abstention appropriate.

There are three major distinctions between the instant case and a *Burford*-type case. First, the actions before us do not involve complex issues of state law. There is, accordingly, no danger of generating conflicting interpretations of state law. The complaints are carefully drafted to isolate only federal issues for decision in this court. We have considered defendants' claims that state law issues are implicated in these actions, but we do not find any merit in these arguments. The due process challenge raised by plaintiffs presents a federal, not a state, question. The identification of New Jersey policy objectives is one aspect of due process analysis, as defendants point out, but we fail to see how this constitutes a "pristine and difficult issue of state law." (Brief of the Commission at 15).

Second, this is not a technical case requiring peculiar expertise. The concentrated judicial review system in the *Burford* case was established to facilitate the court's development of expertise in a highly complex scientific field. This specialized, integrated system of review was an important feature of the *Burford* case which is wholly absent here. *See Roy v. Jones*, 484 F.2d 96, 99 n.13 (3rd Cir. 1973).

Third, decision of the exclusively federal issues raised in these complaints, after plaintiffs have concluded their state appeals, will not disrupt the administrative scheme of the Casino Control Act. We do not agree that "adjudication of this case other than in state court would sound the death knell to the comprehensive scheme [of casino gaming regulation]." (Brief of the Commission at 19). This court is not being asked to make administrative policy, nor to act as an appellate court reviewing the Commission's decisions. When this case reaches a hearing on the merits, we will not be faced with "a barren area of State law," as there will have been final determinations of all plaintiffs' state claims. The state's argument that any decision in this case would be disruptive of its administrative policy is not sound given our decision to stay the action and the fact that there are no state law issues which control the case. Rather, it appears that defendants fear that an *adverse* decision would require a change of administrative policy. Simply because a complaint raises the possibility that state policies may have to be revised in order to remain within constitutional limits does not mean that a federal court must decline to hear the case. *See Santiago v. City of Philadelphia*, 435 F.Supp. 136, 145 (E.D.Pa. 1977).

IV. CONCLUSION

Defendants' motions to dismiss the actions on the basis of *Younger* and *Burford* abstention are denied. However, because we find the case is subject to the *Pullman* doctrine, a stay of proceedings will be entered pending resolution of the state law issues in the state courts. An order will be entered in accordance with this opinion.