Eleonore DOUMANI, Lawrence Doumani, Cindy Doumani and Fred Doumani, Jr., Plaintiffs,

v.

CASINO CONTROL COMMISSION OF NEW JERSEY; Walter N. Read, Chairman; E. Kenneth Burdge, Vice-Chairman; Carl Zeitz, Commissioner; Joel Jacobson, Commissioner; and Valerie Armstrong, Commissioner, Defendants,

and

Irwin I. Kimmelman, Attorney General of the State of New Jersey and the Division of Gaming Enforcement, Intervenor-Defendants.

Civ. No. 85–2748.

United States District Court, D. New Jersey.

Aug. 6, 1985.

Kenneth F. Hense, Joseph S. Pecora, McGlynn, Reed, Hense, Pecora & Irwin, Point Pleasant, N.J., for plaintiffs.

Robert J. Genatt, Gen. Counsel, by John R. Zimmerman, Leonard J. DiGiacomo, Steven M. Ingis, Richard Dana Krebs, Trenton, N.J., for defendants.

Irwin I. Kimmelman, Atty. Gen., by Eugene M. Schwartz, Deputy Atty. Gen., Trenton, N.J., for intervenor-defendants.

## OPINION

BROTMAN, District Judge.

Presently before the court is a motion for a preliminary injunction barring the New Jersey Casino Control Commission, its Chairman, Walter N. Read, its Vice-Chairman, E. Kenneth Burdge, and its Commissioners, Carl Zeitz, Joel Jacobson and Valerie Armstrong (hereafter "the Commission") from conducting hearings regarding the qualifications of plaintiffs Eleonore, Lawrence, and Cindy Doumani and Fred Doumani, Jr., to maintain ownership of stock in Golden Nugget, Inc. The Commission originally scheduled such hearings for June 6, 1985. On June 5, 1985, plaintiffs sought and received temporary restraints pending argument in this matter before the court. On June 24, 1985, the court granted an uncontested motion by the New Jersey Division of Gaming Enforcement ("the Division") to intervene as a party defendant, and then heard presentations by counsel for all parties. The restraints granted on June 5, 1985 have been extended until the issuance of the court's ruling on plaintiff's motion for preliminary injunctive relief.

The complaint invokes the court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiffs contend that the hearing planned by the Commission is unlawful. According to plaintiffs, the agency is unable to establish personal jurisdiction over them because they do not have the requisite "minimum contacts" with the State of New Jersey. The court is also asked to find that plaintiffs are entitled to injunctive relief under the Commerce Clause of Arti-

cle I, Section 8, and the Supremacy Clause of Article VI, of the United States Constitution. The Commission's actions allegedly interfere with interstate trade in securities and trespass in an area preempted by a comprehensive federal regulatory scheme.

Defendants maintain that the court lacks the power to grant the relief requested by plaintiffs, under the doctrine of abstention first enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In the alternative, defendants assert that plaintiffs have failed to satisfy the criteria for issuance of a preliminary injunction.

For the reasons set forth below, the court finds that the *Younger* doctrine is inapplicable to this case. In addition, the court has determined that plaintiffs have failed to carry their burden to show that preliminary injunctive relief is justified. Accordingly, plaintiffs' motion to enjoin the Commission's hearings regarding their independence from Edward Doumani is denied, and the temporary restraints previously in place are dissolved.

*Factual Background*

On November 21, 1980, the Commission issued Golden Nugget of Atlantic City Corp. ("GNAC") a temporary permit to operate a casino in Atlantic City, New Jersey. At that time, the Commission indicated it might require Edward M. Doumani to meet the qualification standards in the Casino Control Act, N.J.S.A. 5:12–1 *et seq.*, ("the Act") because of his substantial holdings of stock in GNAC's publicly-traded parent corporation, Golden Nugget, Inc. ("GNI").[1] Doumani held slightly less than 5% of GNI's stock, the minimum amount which triggers a statutory presumption that a party has an ability to control or elect a director of the parent company. N.J.S.A. 5:12–105(d). All individuals with such influence must qualify under the Act. N.J.S.A. 5:12–85(c), (d).

By 1982, the Doumani family, including the plaintiffs to this action and Edward's

---

1. In April, 1984, GNAC engaged in a restructuring of its corporate identify. Accordingly, the current casino licensee is Golden Nugget Oper-
ating Corp. ("GNOC"), a wholly owned subsidiary of GNAC, which is still a subsidiary of GNI.

brother, Fred M. Doumani, Sr., owned 8.6% of GNI's stock. As investigations proceeded into Edward Doumani's influence in GNI operations, the Commission exacted various conditions in return for giving him a temporary waiver of qualification under the Act. Because the Commission feared Edward Doumani's control over other members of his family, the Commission required the plaintiffs to sign proxy statements in February and December of 1982, whereby they relinquished voting control over their GNI stock to the company's major stockholder, Stephen Wynn.

On January 17, 1984, the Commission commenced qualification hearings concerning Edward Doumani. Prior to issuance of a Commission decision, GNAC submitted a stock disposition agreement calling for Edward and Fred Doumani to sell their stock: 50% to GNI and 50% to their wives. *See* Commission Brief in Opposition at 8–11. The various transactions were intended to bring Doumani family holdings of GNI stock below 5%. The attempt failed by a narrow margin; nevertheless, the Commission approved the deal on April 18, 1984. The Commission deferred decision on Edward Doumani's qualifications and other matters raised by the GNAC proposal, particularly the independence of the Doumani wives (Eleonore and Cindy) and children (Lawrence and Fred, Jr.). In June, 1984, the Commission attempted to notify all parties of its plans to hold hearings on these issues. The agency received no response from plaintiffs. On December 12, 1984, the Commission issued a decision in which it found Edward Doumani to be disqualified and also ruled that he is capable of controlling the GNI stock owned by other members of his family. Accordingly, the Commission ordered the Doumanis to divest themselves of their GNI stock and ordered GNI (1) not to pay dividends or interest to the plaintiffs, (2) not to authorize GNAC to grant plaintiffs other remuneration, such as for services rendered, and (3) not to allow plaintiffs to exercise their voting rights in GNI stock.

On February 8, 1985, counsel for the plaintiffs applied for rehearing of the Commission's decision pursuant to N.J.S.A. 5:12–107(d). Plaintiffs asserted that the December 12, 1984 decision violated their due process rights. In particular, plaintiffs claimed that they did not receive proper notice of the proceedings leading up to the Commission's decision. At a public hearing on the petition for rehearing, held February 13, 1985, plaintiffs' counsel reiterated this claim and also indicated their clients' readiness to present evidence which might lead the Commission to reverse its finding that plaintiffs are not independent of Edward Doumani. Based on this presentation, the Commission decided to schedule a hearing, limited to the issue of notice, for February 27, 1985. Subsequently, at a prehearing conference held February 22, 1985, in response to questions from Commission staff, plaintiffs' counsel also asserted that the Commission lacks personal jurisdiction over their clients.

The Commission went ahead with hearings limited to the issue of notice. During the proceedings, plaintiffs' counsel continued to claim the right to challenge the Commission's jurisdiction over their clients. On May 1, 1985, the Commission ruled that plaintiffs had not received proper notice of proceedings related to their ownership of GNI stock. The agency scheduled a new hearing on the issue for June 6, 1985. On June 5, 1985, the court issued a temporary restraining order staying such proceedings. Plaintiffs now ask the court to issue an order preliminarily enjoining the same.

### Discussion

#### 1. Abstention

Prior to any analysis of plaintiff's request for injunctive relief, the court must address defendants' contention that it is obliged to refrain from further review of this matter in accordance with the doctrine of abstention. The court is urged to find that *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny dictate such a result.

The court has previously noted that in *Younger,*

the Supreme Court announced a rule of equitable restraint with respect to feder-

al court intervention in state criminal prosecutions ... [and] declared that respect for the role of the state governments in the federal system requires federal courts to refrain from enjoining state criminal proceedings absent 'special circumstances.' 401 U.S. at 43–45 [91 S.Ct. at 750–51].

*Hotel and Restaurant Employees & Bartenders Local Union No. 54 v. Read,* 597 F.Supp. 1431, 1438 (D.N.J.1984). The reasoning in *Younger* has been applied so as to bar various efforts to enjoin state civil proceedings, including administrative enforcement proceedings. *Williams v. Red Bank Board of Education,* 662 F.2d 1008, 1014–17 (3d Cir.1981). In this Circuit however, application of *Younger* has been strictly limited, in civil cases, to request for injunctive relief from certain enforcement actions initiated by the state. *Williams v. Red Bank Board of Education, supra,* 662 F.2d at 1019–20; *Johnson v. Kelly,* 583 F.2d 1242, 1247, 1249 (3rd Cir.1978); *Bally Manufacturing Corp. v. Casino Control Commission,* 534 F.Supp. 1213, 1218–20 (D.N.J.1982); *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 145 (E.D.Pa.1977).

On three previous occasions, this court has refused to invoke *Younger* when faced with a request to do so by the present defendants in response to federal civil actions for injunctive relief by parties subject to administrative enforcement proceedings based on the licensing provisions of the Casino Control Act. *Hotel and Restaurant Employees and Bartenders Local Union No. 54 v. Read, supra,* 597 F.Supp at 1438–40; *Hotel and Restaurant Employees and Bartenders Union Local No. 54 v. Danzinger,* 536 F.Supp. 317, 325 (D.N.J.1982), *reversed on other grounds,* 709 F.2d 815 (3d Cir.1983), *reversed and remanded for further proceedings,* — U.S. ——, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984); *Bally Manufacturing Corp. v. Casino Control Commission, supra,* 534 F.Supp. at 1218–20. In each instance, the court found that the state agency proceedings in question were not state-initiated. The court reasoned that such proceedings consisted of, or arose from, a private party's application for a license to operate within the casino industry in Atlantic City. The hearings challenged by the plaintiffs had a similar origin, as they derive from investigations begun by defendant DGE in connection with the application of GNAC to run a casino in Atlantic City.

The Doumanis are slightly different from the plaintiffs in the three other cases referred to above, in that none of them actually initiated proceedings before the New Jersey Casino Control Commission. Accordingly, defendants stress the fact that they initiated disqualification proceedings against these plaintiffs.

The court finds this distinction to be without substance. In the first place, the Commission's disqualification proceedings are directly related to ongoing consideration of GNOC's compliance with the Casino Control Act and the provisions of its casino operating license. Furthermore, any decision by the Commission to require action by the plaintiffs, such as divestiture, would be effective against GNOC. Unless GNOC attempts to secure divestiture by the Doumanis, if such action is ordered by the Commission, GNOC is in violation of N.J. S.A. 5:12–105(d) and its license is in jeopardy. *See infra,* n. 2.

The *Younger* doctrine derives from a policy of deference to state government action. Where, as in this case, private parties become subject to state administrative proceedings and sanctions because of the initiatives of other private parties, *Younger* does not apply. Consequently, it would be inappropriate for the court to dismiss this action on grounds of abstention as defendants request.

2. *Motion for a Preliminary Injunction*

A. *Standard for Issuance of a Preliminary Injunction*

 In order to obtain preliminary injunctive relief in this Circuit, the moving party must show that it has a reasonable probability of success in the litigation and that it will be irreparably harmed *pendente lite* if the preliminary injunction is not

granted. *In Re Arthur Treachers Franchisee Litigation,* 689 F.2d 1137, 1143 (3rd Cir.1982). The trial court may also consider the possibility of harm to other interested parties from the grant or denial of injunctive relief as well as the degree to which the public interest will be served by the award of injunctive relief. *Spartacus, Inc. v. Borough of McKees Rocks,* 694 F.2d 947, 949 (3rd Cir.1982); *In Re Arthur Treachers Franchisee Litigation, supra; Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3rd Cir.1982). The grant or denial of preliminary injunctive relief is within the sound discretion of a district judge. As none of the four factors relevant to a motion for preliminary injunctive relief is determinative, a balancing of all elements is required. *Spartacus, Inc. v. Borough of McKees Rocks, supra; Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.,* 630 F.2d 120, 136 (3d Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). The court will now consider plaintiffs' claims in light of these standards.

### B. *Factors Relevant to Issuance of a Preliminary Injunction*

#### i. *Irreparable Harm*

■ Plaintiffs allege that they will suffer irreparable injury if the Commission is allowed to proceed with hearings on plaintiffs' qualifications as investors in GNI. According to plaintiffs, unless the court enjoins the scheduled hearings, they will suffer damage to their reputation, incur substantial legal expenses and be subjected to unconstitutional proceedings. If the Commission determines plaintiffs are not independent of Edward Doumani, they may be forced to divest themselves of their GNI stock. Plaintiffs claim such an outcome would do additional damage to their reputation, infringe their rights to retain, sell or purchase their stock as they see fit, and subject them to further unconstitutional state action.

Several elements of the irreparable harm claimed by plaintiffs merely represent the ordinary risks of litigation. Legal costs and attorney's fees do not constitute a type of harm for which injunctive relief may be granted. Nor is the possibility of damage to reputation a grounds for enjoining official hearings, as the outcome of such hearings is unclear.

Plaintiffs' claim that they will suffer irreparable harm to their constitutional rights if the allegedly unconstitutional hearings go forward is unpersuasive. To be sure, the merits of plaintiffs' claims is a factor to be considered in ruling on the instant motion, and the court will do so, below. Nevertheless, if hearings go forward, plaintiffs will suffer no deprivation of rights incapable of repair by a victory on appeal, a subsequent application for injunctive relief or a later action for damages. In short, the mere holding of hearings applicable to plaintiffs does not threaten them with irrevocable injury.

The harm from which plaintiffs now seek relief is purely prospective and largely speculative, as such injury, if any, depends on the outcome of the hearings in question. If the planned hearings occur, the Commission may reach a different result than before and find plaintiffs to be independent of Edward Doumani. The record suggests that at least one of the plaintiffs, Cindy Doumani, is confident that recent developments in her relationship to the Doumani family may convince the Commission to change its mind. In the event that the plaintiffs were to prevail, they would be better off than they are now.

Even if the Commission were to hold hearings and reach the same result that they did before, many forms of possible action would not *then* constitute substantial harm to the plaintiffs. By plaintiffs' own testimony, future restrictions on their rights to vote their GNI stock do not threaten them. They have never attempted to exercise such rights, and are presently barred from voting their stock by proxies voluntarily made out to GNI's principal stockholder, Stephen Wynn. Appendix to Commission's Brief at 121–26. Plaintiffs have also stated that they have never attempted to influence GNI's corporate affairs and do not expect to do so in the near future. *See* Plaintiffs' Brief at 9. Accordingly, the possibility of the imposition of

such restrictions in the future does not constitute irreparable harm. Furthermore, remedies at law are available to plaintiffs to redress any harm caused by a Commission order barring them from receiving dividends or other remuneration from GNI. The same is true with respect to plaintiffs' claims that the value of their stock is being lessened by the possibility that they will become the subject of Commission sanctions. *See Oburn v. Shapp,* 521 F.2d 142, 151 (3rd Cir.1975) (claims of financial injury are not alone sufficient to establish irreparable harm).

Plaintiffs' central concern is that the Commission will issue another order requiring them to divest themselves of their GNI stock. If this or any other sanction were to be imposed by the Commission, plaintiffs would have an opportunity, prior to enforcement of the Commission's order, to apply for injunctive relief from this court or from a court of the State of New Jersey. This fact alone, regardless of the other problems with plaintiffs' claims of irreparable harm, renders injunctive relief inappropriate at this time. From the standpoint of irreparable harm, plaintiffs' motion is simply premature.

In light of the absence of irreparable harm likely to accrue to plaintiffs if the relief requested is denied, the court is inclined to deny plaintiffs' motion without further analysis of the claims presented by plaintiffs. *Oburn v. Shapp, supra,* 521 F.2d at 150–51 ("A finding of no irreparable harm is itself sufficient to uphold the district court's denial of a preliminary injunction as a proper exercise of discretion," *citing Commonwealth of Pennsylvania ex rel. Creamer v. United States Dept. of Agriculture,* 469 F.2d 1387, 1388 (3rd Cir. 1972) ). Nevertheless, the court will now briefly review the remaining factors generally relevant to issuance of a preliminary injunction.

### ii. *Likelihood of Prevailing on the Merits*

#### a. *Due Process*

■ Plaintiffs assert the Commission is powerless to proceed with hearings as to their independence from Edward Doumani because the Commission lacks personal jurisdiction over them. The Commission's jurisdiction is alleged to be defective because it is founded solely on plaintiffs' "mere ownership" of stock in GNI. According to plaintiffs, who are citizens and residents of Nevada, they have no significant contacts with the State of New Jersey.

■ The due process clause of the Fourteenth Amendment requires that at least "minimum contacts" exists between a forum state and any party over whom the state seeks to exercise jurisdiction. Such a minimal relationship guarantees that jurisdiction will be enforced in a manner consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Shaffer v. Heitner,* 433 U.S. 186, 198–200, 97 S.Ct. 2569, 2576–77, 53 L.Ed.2d 683 (1977). In New Jersey, the courts are permitted to exercise jurisdiction over nonresidents to the outer limits of the due process requirements of the U.S. Constitution. *Velmohos v. Maren Engineering Corp.,* 83 N.J. 282, 291, 416 A.2d 372 (1980); *Avdel Corp. v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207 (1971). As a state agency whose actions are reviewable in the courts of the State of New Jersey, the Commission is subject to identical limits. *See* R. Casad, *Jurisdiction in Civil Actions,* ¶ 9.10 (1983).

Plaintiffs note that

it is essential in each case that there be some act by which the [party over whom jurisdiction is sought] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Accordingly, plaintiffs challenge the Commission's jurisdiction over them on the grounds that they have never conducted business in New Jersey and have never enjoyed the protection of its laws.

Defendants object that plaintiffs may obtain adequate relief in state judicial and administrative proceedings and that therefore, their due process claim fails to state a federal cause of action under *Cohen v. City of Philadelphia*, 736 F.2d 81 (3rd Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) (rejecting a claim under 42 U.S.C. § 1983 by a city employee who asserted that a city administrative agency erred in denying his application for an award of back-pay). The court finds that *Cohen* is inapplicable here. The alleged violation of due process in *Cohen* was failure to provide a pre-deprivation hearing. Plaintiffs in this case challenge the very power of the Commission to subject them to hearings which may affect their property rights.

■ Plaintiff's summary of the existing law of personal jurisdiction is selective and overly restrictive. The minimum contacts test is not rigid and susceptible to mechanical application. The requirements of due process must be evaluated in light of the "affiliating circumstances" present in a given case. *Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla, supra*, 357 U.S. at 246, 78 S.Ct. at 1235. In addition, the Supreme Court has indicated that a crucial factor in determining a party's susceptibility to the jurisdiction of a distant state is whether the party may reasonably anticipate being brought before a tribunal in that particular forum. *Kulko v. Superior Court of California, supra*, 436 U.S. at 97–98, 98 S.Ct. at 1699–1700. *See also DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284–85 (3rd Cir.1981) (a court must focus on a party's behavior "to determine whether the nature of [its] conduct can be said to have put the [party] on notice that it may be called upon to defend its actions in the forum state"). Furthermore, in cases involving commercial activity, the Supreme Court has gradually extended the scope of in personam jurisdiction. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957). A party engaging in commercial transactions in interstate commerce which

cause significant effects in a particular state is likely to be subject to the jurisdiction of that state so long as the result is reasonable. *Kulko v. Superior Court of California, supra*, 436 U.S. at 101, 98 S.Ct. at 1701; *Kislak, Inc. v. Trumbull Shopping Park, Inc.*, 150 N.J.Super. 96, 101, 374 A.2d 1246 (App.Div.1977).

The defendants' proceedings against various members of the Doumani family are based on findings that plaintiffs' substantial stock ownership in GNI causes significant effects on the casino industry in New Jersey. This conclusion appears reasonable. Furthermore, the record is full of evidence that plaintiffs engaged in acts which they could reasonably have anticipated would affect the casino industry and subject them to the Commission's jurisdiction. For instance, Eleonore and Cindy Doumani received much of their GNI stock from their husbands, who were seeking to satisfy Commission divestiture orders. In February and December, 1982 Eleonore Doumani signed proxies with respect to her GNI stock in order to help her husband avoid disqualification as a major GNI stockholder. Lawrence Doumani and Fred Doumani, Jr. were bound by both proxies. Later, in March, 1984, plaintiffs submitted financial data and irrevocable proxies to GNAC for resubmission to the Commission in support of GNAC's application for approval of a stock disposition agreement involving Edward Doumani and Fred Doumani, Sr. At the same time, Eleonore Doumani and Cindy Doumani agreed to sell GNI stock to GNAC in order to reduce the total family holdings to an acceptable level. Appendix to Commission's Brief at 121–26.

Finally, the record also suggests that plaintiffs waived their right to object to the Commission's personal jurisdiction over them. At a hearing held February 13, 1985 on plaintiffs' petition for rehearing of the Commission's December 12, 1984 decision ordering divestiture, counsel for plaintiffs repeatedly failed to contest the decision on grounds of personal jurisdiction. Instead, counsel argued that their clients never received adequate notice. Counsel also stated that plaintiffs want a chance to have

their "day in court" to refute the Division's divestiture proposal on the merits. *See, e.g.,* Commission's Brief in Opposition, appendix, at 217, 241–43. Plaintiffs certainly did not object to the Commission's jurisdiction "from [the] first pleading" as they contend. *See* Plaintiffs' Brief in Support at 15A–16. Rather, plaintiffs' counsel first explicitly referred to their clients' right to object on grounds of their absence of "minimum contacts" with New Jersey at a prehearing conference on February 22, 1985, in response to questions from the Commission.

### b. *Commerce Clause*

■ Although the Commerce Clause, U.S. Const., Art. I, Sect. 8, cl. 3, acts as a limit on the power of the states, "not every exercise of state power with some impact on interstate commerce is invalid." *Edgar v. Mite Corp.,* 457 U.S. 624, 640, 102 S.Ct. 2629, 2639, 73 L.Ed.2d 269 (1982). Rather, [a] state statute must be upheld if it "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental ... unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." (citations omitted). The Commerce Clause, however, permits only incidental regulation of interstate commerce by the States; direct regulation is prohibited. (citations omitted).

*Edgar v. Mite Corp., supra.* With respect to indirect regulation by the states, the Court has declared that

the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be protected as well with a lesser impact on interstate commerce.

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). In light of these standards, there appears to be no merit to plaintiffs' claim that the Commission's attempt to regulate their ownership of GNI stock violates the Commerce Clause.

It is plain that the regulatory scheme challenged by plaintiff deals "evenhandedly" with interstate and intrastate commerce, as it does not discriminate between the two. No less clear is the strength of New Jersey's interest in strict regulation of the casino gambling industry. *See, e.g., Hotel and Restaurant Employees and Bartenders Union Local No. 54 v. Danzinger,* 536 F.Supp. 317, 321–24 (D.N.J. 1982). Furthermore, it seems evident that the Commission's power to investigate and impose sanctions on stockholders such as plaintiffs, via regulation of casino licensees, amounts to indirect regulation of interstate commerce in securities. Such sanctions regarding unqualified stockholders are enforced primarily through provisions in the corporate by-laws of the corporation issuing the securities, and through regulations applicable to the casino operator's license.[2] Any burden imposed on interstate commerce resulting from Commission action requiring divestiture or other restrictions on shareholders occurs as an

---

**2.** In order to enforce its previous divestiture order involving plaintiffs, the Commission initially directed its attention to plaintiffs rather than GNOC; however, the agency did this because it hoped to avoid enforcement proceedings by obtaining plaintiffs' voluntary compliance. Defendant's Brief in Opposition at 14. Once such cooperation is rejected, the Commission's next step is to consider sanctions against the casino licensee, "including the suspension or revocation of ... the ... license," pursuant to N.J.S.A. 5:12–105(d). The Commission is only barred from obtaining such relief and forced to seek direct action against recalcitrant shareholders when a licensee has met three criteria enumerated in Section 105(d). Prominent among those factors is the requirement that the

licensee, or in this case, its corporate parent, comply with N.J.S.A. 5:12–82(d)(7). Section 82(d)(7) requires a publicly-traded corporate parent of a licensee, such as GNI, to include provisions in its corporate by-laws which require divestiture by shareholders found to be disqualified under the Casino Control Act. Second, Section 105(d) mandates that licensees must make a "good faith effort, including the prosecution of all legal remedies" to comply with any Commission divestiture order. Accordingly, on February 14, 1985, GNI and GNOC filed suit in New Jersey Superior Court, Chancery Division, to enforce language in GNI's by-laws which the Commission has previously found to satisfy Section 82(d)(7). Commission's Brief at 14.

incidental effect of the commission's goal of regulating casino gambling.

Plaintiffs have failed to offer any evidence showing that the Commission's intermittent regulation of ownership in securities is "clearly excessive" in light of New Jersey's strong interest in tight control over the casino gambling industry. Plaintiffs are more forceful in contending that the Commission's indirect regulation of interstate trade in securities is unnecessarily burdensome. In support of this theory, plaintiffs argue that the Commission is confined to action against licensees when it seeks unqualified stockholders in casino-related corporations to divest. The court is not persuaded that the Commerce Clause so narrowly restricts a state agency in the selection of appropriate remedies to accomplish legitimate local objectives. So long as the agency's chosen enforcement mechanism is reasonably necessary to accomplish the desired and legitimate goal, its employment is not barred by the availability of *any* alternative. *Pike v. Bruce Church, supra,* 397 U.S. at 142, 90 S.Ct. at 847. Nothing in *In Re Boardwalk Regency Corp. Casino License,* 90 N.J. 361, 447 A.2d 1335 (1982) is to the contrary. In this regard, the court notes that the Casino Control Act envisions Commission enforcement actions against disqualified shareholders only when Commission efforts directed at a casino licensee, as well as action by a licensee (or its corporate parent) against its shareholders under the firm's corporate by-laws, have met with failure. *See supra,* n. 2.

### c. *Supremacy Clause*

▪ The Supremacy Clause, U.S. Const., Art. VI, cl. 2, commands that provisions of state law which conflict with federal laws are without effect. *Hines v. Davidowitz,* 312 U.S. 52, 61, 61 S.Ct. 399, 401, 85 L.Ed. 581 (1941). The Supreme Court has stated that analysis of claims under the Supremacy Clause must begin "with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981); *see Rice*

*v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Congressional intent to supersede the power of a state to pass a particular regulation may be found, however, where the scheme of federal regulation is so pervasive that there is no room for state regulation in the same field, or where the state regulation may produce a result inconsistent with the objective of the federal statute. *Rice v. Santa Fe Elevator Corp., supra,* 331 U.S. at 230, 67 S.Ct. at 1152. A state enactment may be void to the extent that compliance with both the federal and state statutes is impossible or where the statute frustrates Congressional goals. *Maryland v. Louisiana, supra,* 451 U.S. at 746–47, 101 S.Ct. at 2128–29.

▪ Plaintiffs claim that the Commission's attempt to regulate them constitutes interference in an area preempted by federal securities laws, in violation of the Supremacy Clause. A major premise of this argument is that the federal securities laws are largely intended to remove barriers to the national market in securities. Plaintiffs' Brief in Support at 25. Plaintiffs concede that the federal securities statutes reserve the right of the states to regulate securities; however, plaintiffs point out that the states are only permitted to assert controls directly on intrastate securities transactions. *Id.*

Plaintiffs' Supremacy Clause claim mainly restates their Commerce Clause claim in different language. As the Commission's enforcement mechanisms appear to have only incidental effects on interstate trade in securities, such regulation would seem to be consistent with the "free trade" policies implicit in the federal securities laws, just as it is consistent with similar policies underlying the Commerce Clause. Plaintiffs do not suggest that Commission powers which may affect them are inconsistent with other important concerns fundamental to the scheme set forth by the Securities Exchange Act of 1934 and the Securities Act of 1933. These policies include the

protection of investors and the public from fraudulent practices through disclosure and registration of sellers of securities. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

The court also notes that the state actions in question here essentially involve internal corporate regulation. The Supreme Court has stated that such matters are not preempted by the federal securities laws. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977).

### 3. *The Public Interest and the Position of the Parties*

In light of the foregoing discussion, the court is unable to identify any aspect of the public interest which will be served by an award of injunctive relief. As the court noted above, this motion is premature and without substance. If the court were to grant the relief requested, the defendants' efforts to enforce the Casino Control Act would be stymied. Meanwhile, the denial of such a remedy would subject plaintiffs to no immediate or foreseeable harm.

### Conclusion

None of the factors relevant to the issuance of a preliminary injunction support plaintiffs' petition for such relief. Accordingly, the court determines that such relief must be denied. An appropriate order will be entered.